UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

TYSAAN ROBINSON,
a/k/a "Kream,"

Defendant.

26-CR-2 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

On August 14, 2026, the Government filed a motion to permit an undercover officer ("UC") to testify under a pseudonym and partially seal the courtroom during his testimony at trial. Dkt. 53. On August 18, 2026, the Court held a public hearing on that motion.

At that hearing, after consideration of the relevant factors set forth in *Waller v. Georgia*, 467 U.S. 39, 43 (1984) and its progeny, the Court granted the Government's motion to partially close the courtroom during trial. Specifically, it allowed the UC to testify under a pseudonym to protect his identity and closed the courtroom to the public during his testimony, although, as described below, it ensured public access by way of a live audio feed of the proceedings. It also temporarily sealed audio recordings of the UC admitted as exhibits and played during his testimony due to the "risk to the safety of the [UC]" from making the sound of his voice public. Tr. at 52:10–18. The issue of permanently sealing those exhibits was to be resolved by separate order. *Id.* at 56:20–57:8. In addition, the Court ordered the Government to "make a transcript of the recordings" played during the undercover officer's testimony "as soon as possible." *Id.* at 52:14–15. At the conclusion of the hearing, the Court further ordered the Government to upload those transcripts "no later than tomorrow," *id.* at 254:19, as well as "all of the [other] exhibits and

the trial transcript from the [UC's] testimony" by the end of that day. *Id.* at 254:15–17. The Government complied with these orders.

Later that day, the Court issued an order summarizing its rulings. It stated, among other things, that because "the UC's safety and life would be in grave danger" were his identity to become public, the "Government's interest in protecting the UC's safety and in maintaining the continued effectiveness of ongoing undercover investigations is an overriding interest which would be seriously prejudiced by requiring the UC to testify in an open courtroom." Dkt. 56 at 1. In determining that closing the courtroom was necessary, the Court explained that it had also considered and rejected "alternate means of protecting the UC, such as testifying in disguise or behind a screen" because those methods would "pose a substantial risk to the Defendant's right to a fair trial." *Id.* It further found that "the proposed courtroom closure is no broader than necessary to protect the UC's safety and the integrity of ongoing investigations." *Id.* at 2. It reached that conclusion because, consistent with its directives during the earlier hearing, "the transcript of the proceeding will be made available to the public shortly after the testimony is given, a live audio feed of the UC's testimony will be provided in another courtroom during which any exhibits or recordings played for the jury will be available to the public, and, if requested, the Court will select and permit a member of the press pool to be present during the UC's testimony (the 'Press Representative'), subject to the Press Representative's agreement to abide by the terms of this Order and the nondisclosure provisions set forth therein." *Id.* In sum, not only was a press representative allowed to observe the UC's testimony in the courtroom—though none chose to do so—but the press and public were also able to listen to the testimony and audio exhibits in real time in a separate courtroom.

On August 27, 2026, Inner City Press filed a letter stating, among other things, that the Government had not filed "a separate order memorializing the provisions [the Government] agreed to[,] . . . including posting transcripts of the recorded calls played in the sealed courtroom[] and the exhibits shown during it." Dkt. 60 at 1. As discussed above, many of those issues—as well as others concerning transparency and public access to the proceedings—were addressed during the August 18 hearing and subsequent order. As to the remaining issue of the permanent sealing of the audio recordings with the UC's voice admitted as exhibits and played during his testimony, the Government shall submit a proposed order to that effect by September 3, 2026. Any oppositions to such sealing may be filed by September 8, 2026. Finally, as to Inner City Press's additional request that the Court "address the timeliness of any future requests" for "similar sealing" by the Government, *id.* at 2, the Court is unaware of any such application in an upcoming trial before the undersigned.

SO ORDERED.

Dated: August 31, 2026
New York, New York

Ronnie Abrams
United States District Judge