UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TYSAAN ROBINSON,<br><br>Defendant. | 26-CR-2 (RA)<br><br>ORDER |

RONNIE ABRAMS, United States District Judge:

The Court is in receipt of Mr. Robinson's attached *pro se* motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. It is well-settled that a criminal defendant "has no right to 'hybrid' representation, in which he is represented by counsel from time to time, but may slip into pro se mode for selected presentations." *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016). Counsel for Defendant is thus instructed to inform the Court by no later than November 13, 2026 whether he intends to supplement Defendant's October 5, 2026 motion for acquittal based on the arguments advanced in Mr. Robinson's *pro se* motion.

SO ORDERED.

Dated: November 6, 2026
New York, New York

Ronnie Abrams
United States District Judge

TySaan Robinson
Register No. 90345-053
Metropolitan Detention Center Brooklyn
Brooklyn, New York ~~329002~~ 11232
October 11, 2026

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007
Re: United States v. Tysaan Robinson, 26 Cr. 002(RA)
    Request leave to file pro se

Dear Judge Abrams:

I am the defendant in the above case. I write respectfully , and because i don't know another to bring this to the Court's attention. I am not trying to delay my sentencing, which is scheduled for December 18, 2026.

There is one issue from my trial that i believe should be presented to the Court in a motion under Rule 33, and that has not been. On cross-examination, Candice Healy testified that she processed K2 at her residence on Market Street, that she was never charged with that offense, and that she had told the Government about it (T. 402-04). That offense does not appear on the list of crimes she admitted that the Government produced in discovery, and i am informed it appears nowhere in the 3500 material or in any Brady or Giglio disclosure. The Government did not correct her testimony. In summation it told the jury that Ms.. Healy had "taken responsibility for everything, every crime she's committed, even crimes the government didn't know about" (T.464), and that her testimony was false and went uncorrected, or the disclosure was withheld. I am not in a position to know which, because the records are the Governments.

On October 4,2026 i spoke to my appointed attorney, Mr.. DeMarco, and asked him to file a motion raising the issue. prior to that i had my family send him emails of the issues in motion form and sited cases to back it. He feels the rule 29 is sufficient and said he would either file it or leave a footnote in the motion about the rule 33. i don't which he's done because he hasn't been contacting me or my family to let them know if he did so or not. I understand if its not mentioned now then it would be waived, although by no means do i mean for this issue to go waived. The line of questioning was asked for a reason during the cross and it would do me no justice in letting it go. I understand the period in Rule 33(b)(2) has passed, but also that the Court may permit a late filing under Rule 45(b)(1)(B), that Rule 33(b)(1) allows three years where the motion rests on newly discovered evidence, and that the deadline is not jurisdictional. Eberhart v. United States, 546 U.S. 12(2005).

I therefore respectfully ask the Court to do one of the following:

1. Grant me leave to file a motion under Rule 33 myself, and accept the enclosed proposed motion for filing; or
2. Hold a conference at which I can be heard on this request.

I would also respectfully ask the Court to direct the Government to state whether, when, and to whom Ms.. Healy disclosed the conduct she described at pages 402 to 404 of the trial transcript. If she did disclose it, that answer will show it; if she did not, her testimony was not accurate and the jury was told otherwise.

I understand that i am represented by counsel and that i am not ordinarily permitted to file on my own behalf. I apologize for writing directly, and i thank the Court for its patience and its consideration.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA,
26 Cr. 2(RA)

- v. -

TYSAAN ROBINSON, a/k/a "Kream,"
Defendant,
-------------------------------------------------x

NOTICE OF MOTION FOR A NEW TRIAL PURSUANT TO
FED. R. CRIM. P. 33 AND NAPUE v. ILLINOIS

PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law, the defendant TYSAAN ROBINSON will move this Court, before the Honorable Ronnie Abrams, at the United States Courthouse, 40 Foley Square, New York, New York, for an Order: (1) vacating the verdict and granting a new trial under Fed. R. Crim. P. 33(a); (2) in alternative, ordering an evidentiary hearing and directing the Government to disclose when, whether, and to whom the cooperating witness Candice Healy disclosed her manufacture or processing of K2 at 218 Market Street, together with all related notes and records; (3) to the extent necessary, extending the time to file under Fed. R. Crim. P. 45(b)(1)(B); and (4) granting such other relief as the Court deems

______________________________________________________

[redacted]

RELEVANT FACTS

A. The Government presented Ms. Healy as a witness who had disclosed every crime
On direct examination, the Government elicited that Ms. Healy's cooperation agreement required her to disclose "all crimes" whether or not related to controlled substances (Tr. 339 40); that she had disclosed "crimes that [she] had never been charged with" (Tr. 340); and that if she lied there would be "no cooperation agreement" and she would face a nineteen-year mandatory minimum (Tr. 343 44). The Government walked her through a catalogue of admitted crimes: methamphetamines' distribution, bank fraud, mail theft, aggravated identity theft, and the sale of K2 while she was incarcerated. (Tr. 342, 348 51). When ask whether there were "additional crimes that you did not plead to guilty to but which you the government about," she identified controlled substance use and the prison K2 sales. (Tr. 351). She did not mention manufacturing or processing K2 at her residence.
B. The Market Street K2 conduct surfaced for the first time on cross-examination
On cross, defense counsel asked whether Ms. Healy had ever manufactured K2 at any of her residences. She answered, "Manufacture, no" Asked whether she ever "put it on paper or process[ed] it" she answered "yes" and identified the location: "On Market Street" her own apartment (Tr. 402 04). Counsel then asked directly: Did you tell the government about that?" She answered "Yes, I believe so." Asked whether she was ever charged with it, she answered: "No. The  for the K2, no." (Tr. 404.)
C. The Government never corrected the testimony and then relied on it
The Government did not correct Ms. Healy's statement, did not ask a single question about it on redirect (Tr. 407 10), and did not advise the Court or counsel of an inconsistency with its records. It then argued the point to the jury twice. IN the first summation: She told you she had admitted to crimes that she never been arrested for, crimes that have nothing to do even with controlled substances." (Tr. 439) In rebuttal: "She taken responsibility for everything, every crime she's committed, even crimes that government didn't know about when Ms. Healy was arrested" (Tr. 464), and Candice Healy was just telling it like it is" (Tr. 465).
D. The verdict rested on Ms. Healy
No other witness connected Mr. Robinson. to narcotics. The undercover officer never saw, spoke with, or texted him (Tr. 83,97). The surveillance detective never saw him at either controlled buy, never saw who was driving the Mercedes, and could not say how many people were in it(Tr. 157 59). No Fingerprints, DNA, cell-site evidence, photograph, or video placed him with the drugs. The Government's rebuttal told the jury that Ms. Healy's testimony " on its own sinks the defendant."(Tr. 462.) The jury deliberated less than an hour before returning its verdict. (Tr. 533, 543)

APPLICABLE LAW
A. Rule 33
Rule 33 permits the court to "vacate any judgement and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33 (a). The Court may weigh the evidence and assess credibility, and must grant relief where letting the verdict stand would be "a manifest injustice," that is where there exist " a real concern that an innocent person may have been convicted." United States . Ferguson, 246 F.3d 129, 133 34 (2d Cir. 2001); accord United States v. Spencer, 4 F.3d 115, 118 (2d Cir. 1993).
B. False testimony the Government knew or should have known was false
A conviction obtained through testimony that prosecution knows to be false " must fall under the fourteenth Amendment" and "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue, 360 U.S. at 269. That rule is not limited to testimony bearing directly on guilt: it applies equally when "the false testimony goes only to the credibility of the witness," because "the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence." Id.; accord Giglio, 405 U.S. at 154 55; United States v. Agurs, 427 U.S. 97, 103 (1976).
In this Circuit, where "the prosecution knew or should have known of the perjury," a new trial is required if there is "any reasonable likelihood that the false testimony could have affected the judgement of the jury." United States v. Wong, 78 F.3d 73, 81 (2d Cir. 1996)(quoting United States v. Wong, 78 F.3d at 81 (2d Cir. 1996)(quoting Agurs); see United States v. Wallach, 935 F.2d 445, 456 57 (2d Cir.1991)(new trial where the Governments "centerpiece" witness lied and the prosecutors were

[redacted]

receive a fair trial." Kyles, 514 U.S at 434, 436 37; United States v. Bagley, 473 U.S. 667, 682 (1985).

ARGUMENT POINT I. MS HEALY'S TESTIMONY THAT SHE DISCLOSED THE MARKET STREET K2 CONDUCT WAS FALSE, OR ELSE THE GOVERNMENT SUPRESSED THE DISCLOSURE

The Government produced a written list of crimes Ms. Healy admitted during her cooperation. Processing or manufacturing K2 at 218 market Street is not on it. Nor does it appear in her cooperation agreement (GX 203), in her plea allocution, or in any Section 3500 or Giglio Disclosure. Ms. Healy nevertheless swore that she had told the government about it. (Tr.404) The two possibilities are exhaustive, and both entitle Mr. Robinson relief. Either (a) the testimony was false, in which case the Government allowed uncorrected false testimony form its Central witness and then argued it substance in summation, Napue, 360 U.S. at 269; or (b) the testimony was true , in which case the government possessed an undisclosed admission of uncharged manufacturing by its cooperating witness and failed to produce it, Giglio, 405 U.S. at 154. Mr. Robinson does now know which; only the Government does. That alone warrants an evidentiary hearing. See Wallach, 935 F.2d at 456 57.

POINT II THE GOVERNMENT KNEW OR SHOULD HAVE KNOWN THE TESTIMONY WAS FALSE

This is not a case in which a witness's lie concerned matters outside the Governments knowledge. The subject of the testimony was completeness of the witness's own disclosures to these prosecutors. The Government met with Ms. Healy more than 10 times. (Tr.339). It compiled the list of her admitted crimes. It drafted the cooperation agreement that required disclosures of "all crimes" and represented to the jury that the agreement's disclosure obligation had been honored. (Tr. 339 40, 343 44, 464). Knowledge of what Ms. Healy did and did not proffer is charged on the prosecution team as a matter of law. Kyles, 514 U.S at 437. The Falsity was apparent in real time. Ms. Healy testified in open court to an uncharged controlled-substance offence that was not on the Governments list, and claimed she had disclosed it. At that moment the Government had an obligation either to correct the record or disclose the proffer material reflecting the disclosure. It did neither. It did not address that claim was not true.

POINT III THERE IS AT LEAST A REASONABLE LIKELIHOOD THAT THE FALSE TESTIMONY AFFECTED THE VERDICT

The materiality question is not close for four reason.

The witness was the case. The Government told the jury that Ms. Healy's testimony " on its own sinks the defendant."(Tr. 462.) Where the witness whose credibility is falsely bolstered is the Government's "centerpiece," the conviction cannot stand. Wallach, 935 F.2d at 456 57. No physical, forensic, or eyewitness evidence connected Mr. Robinson to the narcotics. The falsity struck the precise theme the Government used to rehabilitate her. The defense argued Ms. Healy "would lie any time to benefit herself" (tr.453). The Government answered that she had told the truth even when it hurt, " even crimes the government didn't know about." (Tr. 464.) A demonstrated, uncorrected omission of an uncharged drug offense would have converted the Governments best answer into its worst problem and would have supplied the jury with an example of Ms. Healy lying on the witness stand, in this trial, rather in her past.

It bore on her continuing exposure and her incentive to please the Government. Uncharged conduct not covered by a cooperation agreement leaves a witness exposed to prosecution and thus dependent on the Governments goodwill. That is classic Giglio material. Bagley, 473 U.S at 683.

The Jury had little else and little time. Deliberations lasted under an hour (Tr. 533, 543), the drugs were never tested for fingerprints or DNA (Tr. 188 89), no witness say Mr. Robinson at either sale (Tr. 83, 97, 157 59), and the identification of his car was inconsistent across the Government's own witnesses and arguments (silver, gray, and "white") (Tr. 120, 128, 130, 286, 458.).

POINT IV REQUESTED RELIEF'

The court should vacate the verdict and order a new trail. in the alternative before ruling, the Court should order the Government to state on the record whether, when, in what form, and to whom Ms.. Healy disclosed her processing or manufacture of K2 at 218 Market Street.; to produce all proffer notes, agent notes (DEA-6s), drafts of the admitted-crimes list, and attorney communications reflecting that subject; to confirm whether the conduct is covered by her cooperation agreement; and to hold an evidentiary hearing at which Ms.. Healy and the case agents may be examined on the point. See Wallach, 935 F.2d at 456 57.

CONCLUSION

The Government asked the jury to convict Mr. Robinson on the word of a witness it held out as having confessed to everything. Her testimony, measured against the Government's own list, shows that representation was false and that the Government did nothing to correct it. The verdict should be vacated and a new trial ordered, or an evidentiary hearing held.

Dated: October 11, 2026

Respectfully submitted , Tysaan Robinson

[redacted]

RELEVANT FACTS

A. The Government presented Ms..... Healy as a witness who had disclosed every crime
On direct examination, the Government elicited that Ms..... Healy's cooperation agreement required her to disclose "all crimes" whether or not related to controlled substances (Tr. 339 40); that she had disclosed "crimes that [she] had never been charged with" (Tr. 340); and that if she lied there would be "no cooperation agreement" and she would face a nineteen-year mandatory minimum (Tr. 343 44). The Government walked her through a catalogue of admitted crimes: methamphetamines' distribution, bank fraud, mail theft, aggravated identity theft, and the sale of K2 while she was incarcerated. (Tr. 342, 348 51). When ask whether there were "additional crimes that you did not plead to guilty to but which you the government about," she identified controlled substance use and the prison K2 sales. (Tr. 351). She did not mention manufacturing or processing K2 at her residence.
B. The Market Street K2 conduct surfaced for the first time on cross-examination
On cross, defense counsel asked whether Ms..... Healy had ever manufactured K2 at any of her residences. She answered, "Manufacture, no" Asked whether she ever "put it on paper or process[ed] it" she answered "yes" and identified the location: "On Market Street" her own apartment (Tr. 402 04). Counsel then asked directly: Did you tell the government about that?" She answered "Yes, I believe so." Asked whether she was ever charged with it, she answered: "No. The for the K2, no." (Tr. 404.)
C. The Government never corrected the testimony and then relied on it
The Government did not correct Ms..... Healy's statement, did not ask a single question about it on redirect (Tr. 407 10), and did not advise the Court or counsel of an inconsistency with its records. It then argued the point to the jury twice. IN the first summation: She told you she had admitted to crimes that she never been arrested for, crimes that have nothing to do even with controlled substances." (Tr. 439) In rebuttal: "She taken responsibility for everything, every crime she's committed, even crimes that government didn't know about when Ms..... Healy was arrested" (Tr. 464), and Candice Healy was just telling it like it is" (Tr. 465).
D. The verdict rested on Ms..... Healy
No other witness connected Mr.... Robinson. to narcotics. The undercover officer never saw, spoke with, or texted him (Tr. 83,97). The surveillance detective never saw him at either controlled buy, never saw who was driving the Mercedes, and could not say how many people were in it(Tr. 157 59). No Fingerprints, DNA, cell-site evidence, photograph, or video placed him with the drugs. The Government's rebuttal told the jury that Ms..... Healy's testimony " on its own sinks the defendant."(Tr. 462.) The jury deliberated less than an hour before returning its verdict. (Tr. 533, 543)

APPLICABLE LAW
A. Rule 33
Rule 33 permits the court to "vacate any judgement and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33 (a). The Court may weigh the evidence and assess credibility, and must grant relief where letting the verdict stand would be "a manifest injustice," that is where there exist " a real concern that an innocent person may have been convicted." United States . Ferguson, 246 F.3d 129, 133 34 (2d Cir. 2001); accord United States v. Spencer, 4 F.3d 115, 118 (2d Cir. 1993).
B. False testimony the Government knew or should have known was false
A conviction obtained through testimony that prosecution knows to be false " must fall under the fourteenth Amendment" and "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue, 360 U.S. at 269. That rule is not limited to testimony bearing directly on guilt: it applies equally when "the false testimony goes only to the credibility of the witness," because "the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence." Id.; accord Giglio, 405 U.S. at 154 55; United States v. Agurs, 427 U.S. 97, 103 (1976).
In this Circuit, where "the prosecution knew or should have known of the perjury," a new trial is required if there is "any reasonable likelihood that the false testimony could have affected the judgement of the jury." United States v. Wong, 78 F.3d 73, 81 (2d Cir. 1996)(quoting United States v. Wong, 78 F.3d at 81 (2d Cir. 1996)(quoting Agurs); see United States v. Wallach, 935 F.2d 445, 456 57 (2d Cir.1991)(new trial where the Governments "centerpiece" witness lied and the prosecutors were

defendant] receive a fair trial." Kyles, 514 U.S at 434, 436 37; United States v. Bagley, 473 U.S. 667, 682 (1985).

ARGUMENT POINT I. MS HEALY'S TESTIMONY THAT SHE DISCLOSED THE MARKET STREET K2 CONDUCT WAS FALSE, OR ELSE THE GOVERNMENT SUPRESSED THE DISCLOSURE
The Government produced a written list of crimes Ms.... Healy admitted during her cooperation. Processing or manufacturing K2 at 218 market Street is not o it. Nor does it appear in her cooperation agreement (GX 203), in her plea allocution, or in any Section 3500 or Giglio Disclosure. Ms.... Healy nevertheless swore that she had told the government about it. (Tr.404) The two possibilities are exhaustive, and bother entitle Mr... Robinson relief. Either (a) the testimony was false, in which case the Government allowed uncorrected false testimony form its Central witness and then argued it substance in summation, Napue, 360 U.S. at 269; or (b) the testimony was true , in which case the government possessed an undisclosed admission of uncharged manufacturing by its cooperating witness and failed to produce it, Giglio, 405 U.S. at 154. Mr. Robinson does now know which; only the Government does. That alone warrants an evidentiary hearing. See Wallach, 935 F.2d at 456 57.
POINT II THE GOVERNMENT KNEW OR SHOULD HAVE KNOWN THE TESTIMONY WAS FALSE
This is not a case in which a witness's lie concerned matters outside the Governments knowledge. The subject of the testimony was completeness of the witness's own disclosures to these prosecutors. The Government met with Ms.. Healy more than 10 times. (Tr.339). It compiled the list of her admitted crimes. It drafted the cooperation agreement that required disclosures of "all crimes" and represented to the jury that the agreement's disclosure obligation had been honored. (Tr. 339 40, 343 44, 464). Knowledge of what Ms.. Healy did and did not proffer is charged on the prosecution team as a matter of law. Kyles, 514 U.S at 437. The Falsity was apparent in real time. Ms.. Healy testified in open court to an uncharged controlled-substance offence that was not on the Governments list, and claimed she had disclosed it. At that moment the Government had an obligation either to correct the record or disclose the proffer material reflecting the disclosure. It did neither. It did not address that claim was not true.
POINT III THERE IS AT LEAST A REASONABLE LIKELIHOOD THAT THE FALSE TESTIMONY AFFECTED THE VERDICT
The materiality question is not close for four reason.
The witness was the case. The Government told the jury that Ms.. Healy's testimony " on its own sinks the defendant."(Tr. 462.) Where the witness whose credibility is falsely bolstered is the Government's "centerpiece," the conviction cannot stand. Wallach, 935 F.2d at 456 57. No physical, forensic, or eyewitness evidence connected Mr. Robinson to the narcotics. The falsity struck the precise theme the Government used to rehabilitate her. The defense argued Ms.. Healy "would lie any time to benefit herself" (tr.453). The Government answered that she had told the truth even when it hurt, " even crimes the government didn't know about." (Tr. 464.) A demonstrated, uncorrected omission of an uncharged drug offense would have converted the Governments best answer into its worst problem and would have supplied the jury with an example of Ms.. Healy lying on the witness stand, in this trial, rather in her past.
It bore on her continuing exposure and her incentive to please the Government. Uncharged conduct not covered by a cooperation agreement leaves a witness exposed to prosecution and thus dependent on the Governments goodwill. That is classic Giglio material. Bagley, 473 U.S at 683.
The Jury had little else and little time. Deliberations lasted under and hour (Tr. 533, 543), the drugs were never tested for fingerprints or DNA (Tr. 188 89), no witness say Mr. Robinson at either sale (Tr. 83, 97, 157 59), and the identification of his car was inconsistent across the Government's own witnesses and arguments (silver, gray, and "white") (Tr. 120, 128, 130, 286, 458.).
POINT IV REQUESTED RELIEF'
The court should vacate the verdict and order a new trail. in the alternative before ruling, the Court should order the Government to state on the record whether, when, in what form, and to whom Ms.. Healy disclosed her processing or manufacture of K2 at 218 Market Street.; to produce all proffer notes, agent notes (DEA-6s), drafts of the admitted-crimes list, and attorney communications reflecting that subject; to confirm whether the conduct is covered by her cooperation agreement; and to hold an evidentiary hearing at which Ms.. Healy and the case agents may be examined on the point. See Wallach, 935 F.2d at 456 57.
CONCLUSION
The Government asked the jury to convict Mr. Robinson on the word of a witness it held out as having confessed to everything. Her testimony, measured against the Government's own list, shows that representation was false and that the Government did nothing to correct it. The verdict should be vacated and a new trial ordered, or an evidentiary hearing held.
Dated: October 11, 2026
Respectfully submitted , Tysaan Robinson

TySAAN ROBINSON 90345-053
Metropolitan Detention Center Brooklyn
P.O Box 329002
Brooklyn, NY 11232

MID-ISLAND NY 117
22 OCT 2026 PM 6 L

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

USM

10007-150299

Legal